IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DISTRICT

| | |
|---|---|
| THOMAS CHERRY and <br> MARY CHERRY <br><br> Plaintiffs, <br><br> v. <br><br> CROCS, INC. <br><br> Defendant. | ) <br> ) <br> ) <br> ) **JURY DEMAND** <br> ) <br> ) CIVIL ACTION NO: <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

I. INTRODUCTION

1. This is an action for legal and equitable relief to redress unlawful discrimination on the basis of age against the plaintiffs. This suit is brought to secure the protection of and to redress the deprivation of rights secured by the "Age Discrimination in Employment Act," ("ADEA") as amended by "the Civil Rights Act of 1991," 29 U.S.C. § 621 *et seq.* providing for injunctive and other relief against age discrimination. The plaintiffs hereby request a trial by jury of all issues triable by a jury.

II. JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3) and (a)(4) and 42 U.S.C. § 2000e *et seq.* and § 12117. Through supplemental jurisdiction, this Court's jurisdiction extends over the related state law claim of age discrimination as set forth in the Alabama Age Discrimination in Employment Act ("AADEA"), Code of Alabama § 25-1-22 *et seq.*, because the plaintiffs' age discrimination claims arise from a common

nucleus of operative fact.

### III. VENUE

3. A substantial portion of the unlawful employment practices challenged in this action occurred in Jefferson County, Alabama. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e.

### IV. ADMINISTRATIVE PREREQUISITES

4. The plaintiffs have fulfilled all conditions precedent to the institution of this action under the ADEA and the AADEA. The plaintiffs each timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") which alleged age discrimination within 180 days of occurrence of the last discriminatory act. The plaintiffs timely filed suit within ninety days of receipt of the Notice of Right to Sue letters issued by the EEOC.

### V. PARTIES

5. The plaintiff Thomas ("Tommy") Cherry ("Mr. Cherry" or "plaintiff") is a male citizen of the United States, a resident of the State of Alabama, and a resident of this judicial district. Mr. Cherry was sixty-two (62) years of age at the time he was terminated and was approximately sixty-six (66) at the time this suit was filed.

6. The plaintiff Mary Cherry ("Mrs. Cherry" or "plaintiff") is a female citizen of the United States, a resident of the State of Alabama, and a resident of this judicial district. Mrs. Cherry was sixty-one (61) at the time she was terminated and was approximately sixty-five (65) at the time this suit was filed.

7. The defendant Crocs, Inc. ("Crocs" or "defendant") is an entity subject to suit under the ADEA, as amended by the "Civil Rights Act of 1991," 29 U.S.C. § 621 *et seq.* and the

AADEA. The defendant is licensed to conduct business and does conduct business in the State of Alabama.

## VI.  FACTUAL ALLEGATIONS

8. The plaintiffs repeat, reiterate, and reallege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

9. Mr. and Mrs. Cherry began work as independent contractors selling the Crocs product to retailers in approximately October 2004. Mr. and Mrs. Cherry worked through Steve Bijou (approximate late 40s at the time the plaintiffs were terminated), who at the time was a commissioned sales representative for the company. Mr. and Mrs. Cherry developed the retail business in Alabama, Mississippi, Arkansas and Louisiana.

10. In October 2005, Crocs hired Mr. Cherry as a salaried employee with responsibility for sales territories in Alabama, Mississippi, Tennessee and Kentucky. Mr. Cherry was paid $100,000 per year with bonuses which were up to 50% of his salary. During this time period, Mrs. Cherry worked as an employee of Mr. Cherry and was paid by him rather than by Crocs.

11. During this time, the company asked Mr. Cherry to find a sales representative for North Carolina, South Carolina, Virginia and West Virginia and another sale representative for Arkansas and Louisiana. Mr. and Mrs. Cherry found two sales representatives for those areas, and helped to train both sales representatives by introducing them to the sales territories and account lists and providing them with assistance as they learned the positions.

12. In February 2006, Crocs went public and offered Mr. Cherry stock options as part of his compensation. Mr. Cherry exercised a number of these stock options during his employment with the company and such stock options were a substantial part of his compensation.

13. In September 2006, Mike Margolis (approximate age early 50s at the time), who was head of sales, asked Mr. Cherry if he wanted to hire another employee. Mr. Cherry told Margolis he wanted to hire Mrs. Cherry, since she was already helping him with the work load and was traveling with him. Margolis approved and hired Mrs. Cherry with a salary of $40,000 per year with bonuses up to 50% of salary.

14. In late spring or early summer 2007, Crocs hired Sean Fox (approximate age mid-40s at the time) as National Sales Manager. Fox made a number of changes which negatively impacted Mr. and Mrs. Cherry's sales territory. Fox took one of Mr. Cherry's largest clients (Hibbett's) and gave it to a new employee, Laurie Pacheco (approximate age early 40s at the time), despite the fact that she lives in Florida and the client was local to Birmingham. Upon information and belief, Laurie Pacheco had a prior relationship with the Hibbett's buyers, but instead when she worked for Reebok her only account was Just for Feet which is a direct competitor of Hibbett's. Upon information and belief, Pacheco worked in the Just for Feet offices here in Birmingham, Alabama.

15. Mr. and Mrs. Cherry did everything possible to make the transition a smooth one and to make the Hibbett's people believe that they supported the change because they thought it would be best for them. While Mr. and Mrs. Cherry were helping Pacheco transition into her position, a problem arose involving delivery of product. The Hibbett's buyers contacted Mr. and Mrs. Cherry about these issues. Mr. Cherry spoke to Bijou about whether to tell the Hibbett's buyers to contact Pacheco for answers. Bijou stated that Mr. Cherry should tell the Hibbett's buyers to contact Pacheco.

16. Mr. Cherry spoke to Jeff Rosenthal, who was second in charge at Hibbett's, and told him that

Mr. and Mrs. Cherry were no longer assigned to the Hibbett's account. Rosenthal expressed concern to Mr. and Mrs. Cherry that they hoped they did not get replaced because of anything Hibbett's did. Mr. and Mrs. Cherry assured them that was not the case. Mr. told Rosenthal that they hated that they would not be working with them, but assured them that it was in their best interest to have someone who could devote more time and attention to their account. Mr. and Mrs. Cherry took every action to avoid making Crocs look bad to Hibbett's even though they believed it was the wrong decision.

17. In December 2007, Bijou, who was by now a Sales Manager for Crocs, told Mr. Cherry that the company wanted to eliminate one of the Cherry's salaries. Mr. Cherry told him he didn't believe that was fair, since Crocs had taken away a significant client from their territory and given it to Pacheco. Mr. Cherry offered to split his salary with Mrs. Cherry so she could stay on payroll and continue to work for the company. Bijou agreed that Mrs. Cherry was a valuable member of the southeastern sales team, and, after talking to Margolis, indicated that Mrs. Cherry could work for Crocs in a sales development position in another Crocs division which would pay her the same salary. However, Crocs never actually put Mrs. Cherry in that position.

18. On April 30, 2008, Bijou and Human Resources Representative Connie Fisher called Mr. and Mrs. Cherry on a conference call. During that call, Fisher told them that the company was "restructuring" and would no longer need either of them. Mr. and Mrs. Cherry understand that they were the only two outside sales employees in the company terminated as part of the alleged restructuring. Upon information and belief, Crocs terminated two other outside sale employees, Al Clark (approximate age 64) and John Corson (approximate age 65), who were

approximately the same age as Mr. and Mrs. Cherry during the prior year. Crocs then continued to hire other, substantially younger, outside sales employees during this same time period. The remaining portion of Mr. and Mrs. Cherry's sales territory was given to Mark Fitch (approximate age mid-30s at the time), who was a new employee.

19. The plaintiffs each filed a charge of discrimination with the EEOC on or about July 7, 2008. Attachments A & B. The plaintiffs alleged that they were told they were being terminated as part of a reduction in force, but that Crocs continued to hire employees substantially younger than the plaintiffs in order to replace them. *Id.*

20. During the course of the EEOC investigation, Crocs claimed that Mr. and Mrs. Cherry were terminated in part due to poor performance. Bijou admitted to the EEOC investigator that he was told to terminate an employee based on salary and then selected Mr. Cherry due to his large salary. Bijou then selected Mrs. Cherry despite the fact that she did not receive a large salary. Bijou then contacted customers of both Mr. and Mrs. Cherry and solicited negative comments about them.

21. For example, Crocs represented to the EEOC that Mr. and Mrs. Cherry failed to make Bijou aware of declining sales at Hibbett's, which is not true. Mr. and Mrs. Cherry talked to Bijou on a regular and almost daily basis and frequently discussed the major accounts including Hibbett's. Bijou was aware that the declining numbers at Hibbett's were due to the failure of that company to fund reorders on a timely basis. Bijou had access to all the reports to which Mr. and Mrs. Cherry had access, and Bijou went over the sales figures frequently and repeatedly. Mr. and Mrs. Cherry specifically discussed the decline in sales at Hibbett's with Bijou and sought his input about how to rectify the situation.

22. The EEOC issued a Letter of Determination in favor of each of the plaintiffs dated October 1, 2010. Attachments C & D. The EEOC found that "While Respondent articulated the execution of a reduction in force, Charging Part[ies] [Tommy Cherry and Mary Cherry] w[ere] replaced by [] younger worker[s]." *Id.*

23. The EEOC issued Notice of Right to Sue to each of the plaintiffs which were dated October 3, 2011 and those letters were received by the plaintiffs soon after that date. Attachments E & F. The plaintiffs filed this Complaint within 90 days of receipt of Notice of Right to Sue.

### VII. CAUSES OF ACTION

#### CLAIM I – INTENTIONAL AGE DISCRIMINATION

24. The plaintiffs repeat, reiterate, and reallege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

25. The facts set forth above demonstrate that the plaintiffs were better qualified for the position than the individual(s) who were hired for the positions. The plaintiffs were substantially older than the individual(s) hired for the positions.

26. The facts set forth above demonstrate that the defendant's articulated reasons for the termination of the plaintiffs are pretextual.

27. The facts set forth above demonstrate that the defendant's decision to terminate the plaintiffs was intentional discrimination on the basis of their age.

### VIII. DAMAGES

28. The plaintiffs repeat, reiterate, and reallege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

29. The plaintiffs are now suffering, and will continue to suffer, irreparable injury from the defendant's unlawful conduct as set forth herein unless enjoined by this Court.

30. The plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for lost wages, instatement, front pay, declaratory judgment, injunctive relief, and liquidated damages are the only means of securing adequate relief.

## IX. PRAYER FOR RELIEF

WHEREFORE, the plaintiffs respectfully pray that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures conditions and customs of the defendant are violative of the rights of the plaintiffs as secured by the "Age Discrimination in Employment Act," as amended by "the Civil Rights Act of 1991," 29 U.S.C. § 621 *et seq.* and the "Alabama Age Discrimination in Employment Act," Code of Alabama § 25-1-22 *et seq.*

2. Grant the plaintiffs a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate the "Age Discrimination In Employment Act", as amended by the Civil Rights Act of 1991," 29 U.S.C. § 621 *et seq.* and the "Alabama Age Discrimination in Employment Act," Code of Alabama § 25-1-22 *et seq.*

3. Enter an order requiring the defendant to make the plaintiffs whole by awarding each of them back-pay (plus interest), reinstatement (or front-pay), liquidated damages and/or nominal damages, declaratory and injunctive relief, and benefits.

4. The plaintiffs further pray for such other relief and benefits as the cause of justice may require, including but not limited to an award of cost, attorneys' fees and expenses.

Respectfully submitted,

/s/ C. Michael Quinn
C. Michael Quinn
ASB No. 2365-642C
H. Wallace Blizzard
ASB No. 8969-B59H
*Attorneys for Plaintiff*

OF COUNSEL:
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
(205) 314-0500 (Telephone)
(205) 254-1500 (Facsimile)

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY**

/s/
OF COUNSEL

DEFENDANT'S ADDRESS:
Crocs, Inc.
6273 Monarch Place
Niwot, Colorado 80503